Justice Kennedy,
with whom.
The Chief Justice, Justice Ginsburg, and Justice Alito join, dissenting.
The Court today decides that a state prisoner who succeeds in his first federal habeas petition on a discrete sen *344 tencing claim may later file a second petition raising numerous previously unraised claims, even if that petition is an abuse of the writ of habeas corpus. The Court, in my respectful submission, reaches this conclusion by misreading precedents on the meaning of the phrase “second or successive” in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The Court then rewrites AEDPA’s text but refuses to grapple with the logical consequences of its own editorial judgment. A straightforward application of the principles articulated in Panetti v. Quarterman, 551 U. S. 930 (2007), consistent with the conclusions of all of the Courts of Appeals that have considered this issue, dictates the opposite result. The design and purpose of AEDPA is to avoid abuses of the writ of habeas corpus, in recognition of the potential for the writ’s intrusive effect on state criminal justice systems. But today’s opinion, with considerable irony, is not only a step back from AEDPA protection for States but also a step back even from abuse-of-the-writ principles that were in place before AEDPA. So this respectful dissent becomes necessary.
I
Absent two exceptions that are inapplicable here, the relevant statutory provision in AEDPA provides:
“A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed . . . .” 28 U. S. C. § 2244(b)(2).
The question before the Court is whether petitioner Billy Joe Magwood filed “a second or successive” application by raising a claim in his second habeas petition that he had available and yet failed to raise in his first petition.
The term “second or successive” is a habeas “term of art.” Slack v. McDaniel, 529 U. S. 473,486 (2000). It incorporates the pre-AEDPA abuse-of-the-writ doctrine. Panetti, 551 U. S., at 947. Before today, that legal principle was estab *345 lished by the decisions of this Court. See, e. g., ibid.; Slack, supra, at 486. Under that rule, to determine whether an application is “second or successive,” a court must look to the substance of the claim the application raises and decide whether the petitioner had a full and fair opportunity to raise the claim in the prior application. Panetti, supra, at 947. Applying this analytical framework puts applications into one of three categories.
First, if the petitioner had a full and fair opportunity to raise the claim in the prior application, a second-in-time application that seeks to raise the same claim is barred as “second or successive.” This is consistent with pre-AEDPA cases applying the abuse-of-the-writ doctrine and the bar on “second or successive” applications. See, e. g., Wong Doo v. United States, 265 U. S. 239, 241 (1924) (second application barred where petitioner had a “full opportunity to offer proof” of the same claim in his first habeas application); Woodard v. Hutchins, 464 U. S. 377, 379 (1984) (Powell, J., concurring, writing for a majority of the Court) (second application barred for claims that “could and should have been raised in [the] first petition”); Delo v. Stokes, 495 U. S. 320, 321 (1990) (per curiam) (subsequent application barred for a claim that “could have been raised in his first petition for federal habeas corpus”). As McCleskey v. Zant, 499 U. S. 467, 489 (1991), explained, “a petitioner can abuse the writ by raising a claim in a subsequent petition that he could have raised in his first, regardless of whether the failure to raise it earlier stemmed from a deliberate choice.” See also Habeas Corpus Rule 2(e) (instructing habeas petitioners to “specify all the grounds for relief available to [them]” and to “state the facts supporting each ground”); Schlup v. Delo, 513 U. S. 298, 317-323 (1995) (describing adoption in habeas, through legislation and judicial decision, of modified res judicata (claim preclusion) doctrine); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4406, p. 138 (2d ed. 2002) (claim preclusion aspect of res judicata doctrine bars *346 “matters that [were not, but] ought to have been raised” in prior litigation).
Second, if the petitioner had no fair opportunity to raise the claim in the prior application, a subsequent application raising that claim is not “second or successive,” and § 2244(b)(2)’s bar does not apply. This can occur where the claim was not yet ripe at the time of the first petition, see, e. g., Panetti, supra, at 947, or where the alleged violation occurred only after the denial of the first petition, such as the State’s failure to grant the prisoner parole as required by state law, see, e. g., Hill v. Alaska, 297 F. 3d 895, 898-899 (CA9 2002); Crouch v. Norris, 251 F. 3d 720, 723-725 (CA8 2001); In re Cain, 137 F. 3d 234, 236 (CA5 1998). And to respond to the Court’s concern, see ante, at 341, if the applicant in his second petition raises a claim that he raised in his first petition but the district court left unaddressed at its own discretion, the second application would not be “second or successive.” Reraising a previously unaddressed claim is not abusive by any definition. If the Court believes there are “[m]any examples” where abuse-of-the-writ principles unfairly close the door to state prisoners seeking federal habeas review, ibid., one would think the Court would be able to come up with an example. It does not do so.
Third, a “mixed petition” — raising both abusive and non-abusive claims — would be “second or successive.” In that circumstance the petitioner would have to obtain authorization from the court of appeals to proceed with the nonabusive claims. See § 2244(b)(3); see also 28 J. Moore et al., Federal Practice § 671.10[2][b] (3d ed. 2010). After the court of appeals makes its determination, a district court may consider nonabusive claims that the petitioner had no fair opportunity to present in his first petition and dismiss the abusive claims. See § 2244(b)(4).
The operation of the above rule is exemplified by the Court’s decision in Panetti. Panetti’s claim that he was mentally incompetent to be executed under Ford v. Wain *347 wright, 477 U. S. 399 (1986), did not become ripe until after the denial of his first habeas petition. When the Ford claim became ripe, Panetti filed a second habeas petition, raising his Ford claim for the first time. In concluding that this second habeas petition was not a “second or successive” application, this Court explained that “second or successive” did not “refe[r] to all § 2254 applications filed second or successively in time,” but was rather a term of art that “takes its full meaning from our case law, including decisions predating the enactment of [AEDPA].” 551 U. S., at 943-944. The Court relied on AEDPA’s purpose of “ 'furthering] the principles of comity, finality, and federalism,’” id., at 945 (quoting Miller-El v. Cockrell, 537 U. S. 322, 337 (2003)), an aversion to the “empty formality requiring prisoners to file unripe” claims, 551 U. S., at 946, and this Court’s preAEDPA cases regarding the abuse-of-the-writ doctrine, id., at 947. Panetti thus looked to the nature of the claim raised in the second-in-time habeas petition to determine that the application was not “second or successive.” Ibid.
The above principles apply to a situation, like the present one, where the petitioner in his first habeas proceeding succeeds in obtaining a conditional grant of relief, which allows the state court to correct an error that occurred at the original sentencing. Assume, as alleged here, that in correcting the error in a new sentencing proceeding, the state court duplicates a different mistake that also occurred at the first sentencing. The second application is “second or successive” with respect to that claim because the alleged error “could and should have” been raised in the first petition. Woodard, 464 U. S., at 379 (opinion of Powell, J.). Put another way, under abuse-of-the-writ principles, a petitioner loses his right to challenge the error by not raising a claim at the first opportunity after his claim becomes ripe. On the other hand, if the petitioner raises a claim in his second habeas petition that could not have been raised in the earlier petition — perhaps because the error occurred for the first *348 time during resentencing — then the application raising the claim is not “second or successive” and § 2244(b)(2)’s bar does not apply.
Although the above-cited authorities are adequate to show that the application in this case is “second or successive,” it must be noted that no previous case from this Court has dealt with the precise sequence of events here: A petitioner attempts to bring a previously unraised claim after a second resentencing proceeding that followed a grant of federal habeas relief. The conclusion that such an application is barred as “second or successive” unless the claim was previously unavailable is consistent with the approach of every Court of Appeals that has considered the issue, although some of those cases highlight subtleties that are not relevant under abuse-of-the-writ principles. See, e. g., Pratt v. United States, 129 F. 3d 54, 62-63 (CA1 1997); Galtieri v. United States, 128 F. 3d 33, 37-38 (CA2 1997); United States v. Orozco-Ramirez, 211 F. 3d 862, 871 (CA5 2000); Lang v. United States, 474 F. 3d 348, 351-353 (CA6 2007). While most of these cases arose in the context of federal prisoners’ challenges to their convictions or sentences under 28 U. S. C. § 2255, the “second or successive” bar under § 2244(b) applies to § 2255 motions. See § 2255(h) (2006 ed., Supp. II).
In the present case the Court should conclude that Mag-wood has filed a “second or successive habeas corpus application.” In 1983, he filed a first federal habeas petition raising nine claims, including that the trial court improperly failed to consider two mitigating factors when it imposed Mag-wood’s death sentence. The District Court granted Mag-wood’s petition and ordered relief only on the mitigating factor claim. The state trial court then held a new sentencing proceeding, in which it considered all of the mitigating factors and reimposed the death penalty. In 1997, Magwood brought a second habeas petition, this time raising an argument that could have been, but was not, raised in his first petition. The argument was that he was not eligible for the *349 death penalty because he did not have fair notice that his crime rendered him death eligible. There is no reason that Magwood could not have raised the identical argument in his first habeas petition. Because Magwood had a full and fair opportunity to adjudicate his death-eligibility claim in his first petition in 1983, his 1997 petition raising this claim is barred as “second or successive.”
II
The Court reaches the opposite result by creating an ill-defined exception to the “second or successive” application bar. The Court, in my respectful view, makes two critical errors. First, it errs in rejecting Panetti’s claim-based approach to determining whether an application is “second or successive.” Second, it imposes an atextual exception to § 2244(b)’s bar against “second or successive” applications, requiring that the seeond-in-time application be brought against the same judgment. This second error is underscored by the fact that the Court refuses to deal with the logical implications of its newly created rule.
A
The Court concludes that because AEDPA refers to “second or successive” applications rather than “second or successive” claims, the nature of the claims raised in the second application is irrelevant. See ante, at 334-335 (“ [Although we agree with the State that many of the rules under § 2244(b) focus on claims, that does not entitle us to rewrite the statute to make the phrase' 'second or successive’ modify claims as well”). This is incorrect. As explained above, Panetti establishes that deciding whether an application itself is “second or successive” requires looking to the nature of the claim that the application raises to determine whether the petitioner had a full and fair opportunity to raise that claim in his earlier petition. Indeed, the only way Panetti could have concluded that the application there was not “sec *350 ond or successive” was to look at the underlying claim the application raised. 551 U. S., at 947.
While the Court asserts it is not calling Panetti into doubt, see ante, at 335, n. 11, it does not even attempt to explain how its analysis is consistent with that opinion, cf. 551 U. S., at 964 (Thomas, J., dissenting) (“Before AEDPA’s enactment, the phrase ‘second or successive’ meant the same thing it does today — any subsequent federal habeas application challenging a state-court judgment”). The best that can be said is the Court is limiting its new doctrine so it has no applicability to previously unexhausted Ford claims, confining the holding of Panetti to the facts of that case. 551 U. S., at 968 (Thomas, J., dissenting) (“Today’s decision thus stands only for the proposition that Ford claims somehow deserve a special (and unjustified) exemption from the statute’s plain import”).
Failing to consider the nature of the claim when deciding whether an application is barred as “second or successive” raises other difficulties. Consider a second-in-time habeas petition challenging an alleged violation that occurred entirely after the denial of the first petition; for example, a failure to grant a prisoner parole at the time promised him by state law or the unlawful withdrawal of good-time credits. See supra, at 346. Under the Court’s rule, it would appear that a habeas application challenging those alleged violations ■ would be barred as “second or successive” because it would be a second-in-time application challenging custody pursuant to the same judgment. That result would be inconsistent with abuse-of-the-writ principles and might work a suspension of the writ of habeas corpus.
B
Having unmoored the phrase “second or successive” from its textual and historical underpinnings, the Court creates a new puzzle for itself: If the nature of the claim is not what makes an application “second or successive,” then to *351 what should a court look? Finding no reference point in §2244(b)’s text, the Court searches in AEDPA for a different peg.
The Court believes that it finds its peg in a different provision:
“[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.” § 2254(a).
But this provision does not purport to create any prerequisites to § 2244(b)’s bar against “second or successive” applications. The accepted reading of the quoted language is that this is a mere “status requirement.” See 1 R. Hertz & J. Liebman, Federal Habeas Corpus Practice and Procedure § 8.1, p. 391 (5th ed. 2005). The provision stands for the simple proposition that a petitioner must be held “pursuant to the judgment of a State court” to be able to file any § 2254(b) petition in the first place. That reading also explains why federal habeas petitions can attack not only the judgment pursuant to which the petitioner is being held but also “the duration of sentence . . . and . . . the conditions under which that sentence is being served,” including rules such as “the basis of parole” and “good time” credits. Id., § 9.1, at 475-481.
The Court’s reading of the phrase “pursuant to the judgment of a State court” as a limitation on § 2244(b)(2)’s “second or successive” application bar is artificial. The Court would amend § 2244(b)(2) to read: “A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application [against the same judgment] shall be dismissed.” This is not what § 2244(b)(2) says.
The Court wholly glosses over another significant problem with its atextual analysis. The Court relies upon the notion *352 that “[a]n error made a second time is still a new error.” Ante, at 339. But in making this statement, the Court can mean one of two very different things:
First, it could mean that any error logically encompassed in a reentered judgment is a “new” error. A criminal “judgment” generally includes both the conviction and the sentence. See, e. g., Fed. Rule Crim. Proc. 32(k)(l) (a criminal judgment “must set forth the plea, the jury verdict or the court’s findings, the adjudication, and the sentence”); Teague v. Lane, 489 U. S. 288, 314, n. 2 (1989) (“As we have often stated, a criminal judgment necessarily includes the sentence imposed upon the defendant”). This well-established principle applies in the federal habeas context, where petitioner is “in custody pursuant to the judgment.” § 2254(b). A person cannot be held in custody “pursuant to” a sentence, but only pursuant to “the” (e. g., one) judgment, which includes both the conviction and sentence. See Burton v. Stewart, 549 U. S. 147, 156-157 (2007) (per curiam) (explaining that AEDPA’s statute of limitations did not run until the judgment — “both his conviction and sentence became final” (internal quotation marks omitted)).
Under this principle, the' Court’s holding today would allow a challenger in Magwood’s position to raise any challenge to the guilt phase of the criminal judgment against him in his second application, since a “new” judgment — consisting of both the conviction and sentence — has now been reentered and all of the errors have (apparently) occurred anew. As an illustration, the state trial court here reentered the following judgment after resentencing: “IT IS, THEREFORE, ORDERED AND ADJUDGED BY THE COURT that Billy Joe Magwood is guilty of the offense of aggravated murder . . . and that Billy Joe Magwood is sentenced to death.” App. to Pet. for Cert. 106a. This would mean that Magwood’s attorney could dig through anything that occurred from voir dire to the cross-examination of witnesses to the jury’s guilty verdict, and raise any alleged errors for *353 the first time in his second habeas application, all because the trial court did not properly consider two mitigating factors during Magwood’s first sentencing proceeding.
Second, and alternatively, the Court could retreat even further from the statutory text and conclude that only some parts of the reentered judgment are open to challenge by way of a second habeas application. Magwood, for example, argues that he can only challenge previously unraised errors made during sentencing. Brief for Petitioner 21, n. 8. Indeed, Magwood goes further and suggests that even the sentencing would not be reopened in a case where a court’s order leads the trial court to revise only the defendant’s term of supervised release. Id., at 28, n. 11. If the Court is adopting this some-parts-of-the-criminal-judgment exception to the “second or successive” application bar, it is unclear why the error that Magwood now raises is a “new error” at all. After all, Magwood did not challenge his death eligibility in his first habeas petition but only disputed that he should not get the death penalty, as a matter of discretion, if the trial court properly weighed all of the aggravating and mitigating factors. The state trial court conducted this reweighing and had no reason to reconsider the uncontested finding that Magwood is death eligible. It is hard to see how the trial court’s failure to reconsider sua sponte its previous death-eligibility finding is a “new error,” any more than its failure to reconsider the various errors that may have taken place at the guilt phase would have been new errors.
The Court contends the approach dictated by Panetti “considerably undermine[s] — if not render[s] superfluous,” ante, at 335, the exceptions in § 2244(b)(2), which allow a petitioner to bring a claim in a “second or successive” application based on certain factual discoveries or based on a new Supreme Court precedent that has been applied retroactively. The Court seems to be saying that applying Panetti’s rule would make the exceptions superfluous, because any claim that *354 would satisfy the exceptions would necessarily satisfy the more general rule derived from the abuse-of-the-writ doctrine. But the Court misconceives the scope of the rule that an application is only “second or successive” if it raises for the first time a claim that could have been raised before. A second petition raising a claim that could have been raised in a prior petition, even though strengthened by a new decision from this Court or based upon newly discovered evidence, is still “second or successive.” Thus this subsequent application would only be permitted if it qualified under the pertinent subsection (b)(2) exception. In fact, it is the Court’s approach that limits the relevance of the subsection (b)(2) exceptions. Under the Court’s theory, the “second or successive” bar does not apply at all to applications filed by petitioners in Magwood’s situation, and thus the subsection (b)(2) exceptions would have no operation in that context.
Ill
The Court’s approach disregards AEDPA’s “ ‘principles of comity, finality, and federalism.’” Panetti, 551 U. S., at 945 (quoting Miller-El, 537 U. S., at 337). Under the Court’s newly created exception to the “second or successive” application bar, a defendant who succeeds on even the most minor and discrete issue relating to his sentencing would be able to raise 25 or 50 new sentencing claims in his second habeas petition, all based on arguments he failed to raise in his first petition. “[I]f reexamination of [a] convictio[n] in the first round of habeas offends federalism and comity, the offense increases when a State must defend its conviction in a second or subsequent habeas proceeding on grounds not even raised in the first petition.” McCleskey, 499 U. S., at 492.
The Court’s novel exception would also allow the once-successful petitioner to reraise every argument against a sentence that was rejected by the federal courts during the first round of federal habeas review. As respondents explain, under the Court’s theory, “a post-resentencing peti *355 tioner could simply staple a new cover page with the words, '§ 2254 Petition Attacking New Judgment,’ to his previously adjudicated petition.” Brief for Respondents 47. Because traditional res judicata principles do not apply to federal habeas proceedings, see Salinger v. Loisel, 265 U. S. 224, 230 (1924), this would force federal courts to address twice (or thrice, or more) the same claims of error. The State and the victims would have to bear anew the “significant costs of federal habeas corpus review,” McCleskey, supra, at 490-491, all because the petitioner previously succeeded on a wholly different, discrete, and possibly unrelated claim.
The Court’s suggestion that “[i]t will not take a court long to dispose of such claims where the court has already analyzed the legal issues,” ante, at 341, n. 15, misses the point. This reassurance will be cold comfort to overworked state district attorneys, who will now have to waste time and resources writing briefs analyzing dozens of claims that should be barred by abuse-of-the-writ principles. It is difficult to motivate even the most dedicated professionals to do their best work, day after day, when they have to deal with the dispiriting task of responding to previously rejected or otherwise abusive claims.- But that is exactly what the Court is mandating, under a statute that was designed to require just the opposite result. If the analysis in this dissent is sound it is to be hoped that the States will document the ill effects of the Court’s opinion so that its costs and deficiencies are better understood if this issue, or a related one, can again come before the Court.
The Court’s new exception will apply not only to death penalty cases like the present one, where the newly raised claim appears arguably meritorious. It will apply to all federal habeas petitions following a prior successful petition, most of which will not be in death cases and where the abusive claims the Court now permits will wholly lack merit. And, in this vein, it is striking that the Court’s decision means that States subject to federal habeas review hence *356 forth receive less recognition of a finality interest than the Federal Government does on direct review of federal criminal convictions. See United States v. Parker, 101 F. 3d 527, 528 (CA7 1996) (Posner, C. J.) (“A party cannot use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal because the remand did not affect it”).
The Court’s approach also turns AEDPA’s bar against “second or successive” applications into a one-way ratchet that favors habeas petitioners. Unless today’s decision is read to unduly limit Panetti, see supra, at 350, AEDPA still incorporates recognized exceptions to the abuse-of-the-writ doctrine to allow petitioners to bring their previously unavailable and unripe claims, see ante, at 343 (Breyer, J., concurring in part and concurring in judgment). But after today’s holding, AEDPA now “modifie[s],” ante, at 337, abuse-of-the-writ principles and allows petitioners to bring abusive claims so long as they have won any victory pursuant to a prior federal habeas petition. The Court thus reads AEDPA as creating a new loophole that habeas petitioners can exploit to challenge their sentences based on grounds they previously neglected to raise. This is inconsistent with the understanding that AEDPA adds “new restrictions on successive petitions” and “further restricts the availability of relief to habeas petitioners.” Felker v. Turpin, 518 U. S. 651, 664 (1996).
* * *
Had Magwood been unsuccessful in his first petition, all agree that claims then available, but not raised, would be barred. But because he prevailed in his attack on one part of his sentencing proceeding the first time around, the Court rules that he is free, postsentencing, to pursue claims on federal habeas review that might have been raised earlier. The Court is mistaken in concluding that Congress, in enacting a statute aimed at placing new restrictions on successive petitions, would have intended this irrational result.
*357 Magwood had every chance to raise his death-eligibility claim in his first habeas petition. He has abused the writ by raising this claim for the first time in his second petition. His application is therefore “second or successive.” I would affirm the judgment of the Court of Appeals.